321 So.2d 50 (1975)
STATE of Louisiana, Plaintiff-Appellee,
v.
Russell H. FREE, Defendant-Appellant.
No. 5153.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
Rehearing Denied November 13, 1975.
Writ Refused January 9, 1976.
*52 Eugene P. Cicardo, Alexandria, for defendant-appellant.
L. Paul Gianfala, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
In this civil proceeding defendant Russell H. Free appeals the judgment ordering him to surrender to plaintiff State of Louisiana all permits and licenses to operate a motor vehicle on finding him to be a habitual offender as defined by LSA-R.S. 32:1472. We affirm.
Pursuant to the habitual offender statute, the Department of the Public Safety certifies a record of convictions to the appropriate district attorney when a driver accumulates a certain number of prescribed convictions within a five year period. The statute mandates filing a petition in criminal district court which results in an order to defendant to show cause why he should not be adjudged an habitual offender. A judgment so rendered requires defendant to surrender his licenses and permits to operate a motor vehicle and directs him not to operate a motor vehicle on the highways of this state for five years. The penalty for violation of this order is imprisonment for not less than one nor more than five years. LSA-R.S. 32:1480. If a person adjudged an habitual offender is charged (and convicted) of an offense prescribed by this chapter after his adjudication an additional penalty is provided. § 1481.
The threshold issue is the nature of the actionis it civil or criminal? On argument the State conceded statutory interpretation alone would defeat its case if this were a criminal matter for strict construction would then be required. We also note this court's jurisdiction is restricted to civil matters. Louisiana Constitution of 1974, Art. V, § 10.

CONSTRUCTION
Defendant argues this statute is in derogation of his right to operate a motor vehicle and for that reason should be narrowly construed. We reject this contention.
A distinction is made between "rights" and "privileges" to allow broad construction of statutes affecting privileges. Regard for persons is the pivotal basis for applying narrow construction to statutes as they more directly adversely affect the person.
However, construing a statute narrowly as it affects one interest usually results in a broad construction as it affects other interests. Therefore some reason must be established to determine whose is the prime interest for protection. We take our cue by determining whose interest the "right or privilege" to drive was intended to further. For example, the privilege of holding public office was intended to benefit the public. Ricks v. Department of Public Service, 200 La. 341, 8 So.2d 49 at 56 (1942). The familiar example of the Bill of Rights is one intended to preserve an individual's liberty and therefore is for his private benefit.
The state's streets and highways are constructed with public funds as arteries of commerce and transportation for the public's benefit and well being. There may be incidental private benefit from operating a motor vehicle, but the individual's right to operate a vehicle is in furtherance of the public interest.
So long, then, as the state is free of arbitrary, capricious or invidious discrimination, it may restrict this "right or privilege" to promote the public welfare it was originally conceived to serve. Courts will "broadly" interpret such statutes in the public's favor. Perhaps to say the court will give the fullest effect to the premise that the legislature intends to benefit the public interest is more accurate.

*53 EXCEPTIONS
In this court Free filed exceptions of no right and no cause of action. The exception of no right of action was abandoned at argument.
The exception of no cause of action is aimed at two points in LSA-R.S. 32:1472(A)(1)(b), a portion of the law under which the surrender of Free's driver's license was ordered. The statute defines habitual offenders as persons who, within a five-year period, have accumulated three or more convictions of certain stated offenses including:
§ 1472(A)(1)(b) Operating or attempting to operate while under the influence of intoxicating liquor or drugs, operating or attempting to operate while impaired by the use of intoxicating liquor or drugs or operating or attempting to operate while intoxicated by the use of intoxicating liquor or drugs . . .
Free first contends the section does not refer to operating a motor vehicle while intoxicated, since the italicized words do not appear. Secondly, he was convicted of operating a motor vehicle while under the influence of intoxicating beverages (LSA-R.S. 14:98)not of intoxicating liquor, as required by the above quotation.

MOTOR VEHICLES
The absence of an object for the sentence regarding "operating or attempting to operate" would be a fatal defect in a criminal statute. In this civil statute it creates an ambiguityoperate what? which we resolve by ascertaining the legislative intent. The Mary Ann, 21 U.S. 380, 8 Wheat. 380, 5 L.Ed. 641 (1823); State ex rel Reuter v. Board of Commissioners of Port of New Orleans, 161 La. 207, 108 So. 417 (1926). In construing the statute all parts are construed together. Reynolds v. Baldwin, 1 La.Ann. 162 (1846). In the remaining sub-paragraphs, the words motor vehicle appear as the object of the activity described therein. The chapter title is Motor Vehicle Habitual Offender Law.
Examination of the legislative history of Senate Bill 302 (of 1972), the legislative instrument by which this law originated reveals that the ellipsis was present in its inception, not the result of a deliberate deletion by amendment. The context of the statute in which the quoted section appears establishes "motor vehicles" as the object to which "operating" refers. The inference that "motor vehicle" is the proper object is so obvious as to make extended justification unnecessary.
Literally interpreted there is a disparity between the terms "intoxicating liquor" and "alcoholic beverages." State v. Viator, 229 La. 882, 87 So.2d 115 (1956). But there are alcoholic beverages which are intoxicating. We take judicial notice that one's driving is impaired because of intoxication from alcohol whether it be in the limited form of intoxicating liquor or in the all inclusive form of intoxicating beverages. The distinction is not essential because the legislature bases the cause of action on the "offenses described" as section (A) characterizes these subsections. Although this language may be inadequate to define a crime, it is sufficient to refer to the convictions which are the relevant facts. The disparity in terms does not defeat the reference. Gardner v. State, Department of Public Safety, 198 So.2d 184 (La.App. 3 Cir. 1967). The legislature intended to prevent multiple "DWI" and other serious driving offenders from driving on the highways.

SUSPENSIVE APPEAL
Free assigns the trial court's denial of his motion for a suspensive appeal as error. The district attorney contends the statute does not specifically authorize a suspensive appeal and the trial court has discretion to grant or refuse a suspensive appeal. We reject this argument.
*54 This action was tried and is before us as a civil proceeding and is governed by civil procedure. These rules for appeals are applicable by the terms of LSA-R.S. 32:1478 wherein appeal is made "in the same manner and form as appeals in civil actions." LSA-C.C.P. art. 2123 allows suspensive appeals when perfected within thirty days "[e]xcept as otherwise provided by law,. . . ." Therefore the trial court erroneously denied Free's application for a suspensive appeal. We hold Free's appeal to have been a suspensive appeal.

ABSTRACT OF CONVICTION
Free contends the Department's abstract of conviction was improperly admitted because it was not "certified." The official who signed the certification was not custodian of records. The issues here are: 1) Must the certifying person have some specific capacity; or 2) May any person in the Department of Public Safety "certify" facts as truly reflecting the content of that department's records?
The requirements for certified records are set forth in LSA-C.C. art. 2267; LSA-C.C.P. art. 1394; and LSA-R.S. 13:3711. All require the certifying person to be 1) specifically authorized or 2) custodian of the original. LSA-R.S. 32:1473 uses the word "certify" without expressly stating or deleting the requirements. Absent language to the contrary "certify" has the meaning common to the other provisions. Therefore the abstract was improperly admitted because it was not properly certified.
This does not change the result, for under cross-examination Free admitted his three convictions within the five year period. Tr. 32. Since evidence of the convictions is properly in the record exclusive of the abstract, there is no manifest error in the trial judge's finding.

UNCOUNSELED CONVICTIONS
Defendant attacks the constitutionality of the application of the statute because one of his convictions was made on a plea of guilty without benefit of counsel. Tr. 32.
The problem of uncounseled convictions has two levels. Unwaived absence of counsel is a defect when there is a deprivation of liberty [Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)], or a potential deprivation of liberty. City of Monroe v. Fincher, 305 So.2d 108 (La.1974).
However, this defect becomes an issue to Free when and if the case comes up at the second levelwhen there is an attempt to use that conviction in a subsequent proceeding. State of Louisiana v. Love, 312 So.2d 675 (La.App. 2 Cir. 1975). Since this is a civil action and no deprivation of liberty is or can be contemplated, the stringent safeguards of criminal proceedings are not applicable. The constitutional restriction on the state's imposition of criminal sanctions is not germane to determine the state's right in a civil proceeding to protect its motorists from mayhem on the highways. Further, raising the absence of counsel in the prior criminal proceeding in this civil proceeding amounts to a collateral attack on that judgment which is not allowed. Gardner v. State, supra.
This reasoning will not apply should an attempt be made under LSA-R.S. 32:1481 to proceed under the criminal sanctions of this statute. Defendant may raise his constitutional rights as a defense in that event.

FREE'S TESTIMONY UNDER CROSS-EXAMINATION
Free's counsel objected to the district attorney questioning his client under *55 cross-examination, contending his client could not be required to testify against himself. This is a civil proceeding involving Louisiana's civil right to protect motorists from those who have become habitual offenders of serious driving offenses which justifiably question their ability to properly use their right to drive on the highways. The rights of the general driving public are superior to the privilege Louisiana extended to Free to drive on the highways. When the issue is presented as to whether Free abided with the conditions required of those licensed to use Louisiana's highways, he is subject to cross-examination just as he is subject to cross-examination in civil proceedings involving damages he may have caused.
The trial court judgment is affirmed except insofar as it denied Free's right to a suspensive appeal. All costs of this appeal are assessed to appellant.
Affirmed.